### DICKERT v. FARMERS MUTUAL INS. ASS. OF CHESTER.

1. AGENCY—INSURANCE—EVIDENCE.—Where facts relied on to support agency are admitted, it is a question of law, otherwise it is one of law and fact, and here the evidence of notice to the alleged agent of the insured of cancellation of the policy, should have been submitted to the jury, in view of the evidence as to general agency.
2. INSURANCE.—The by-laws of the Farmers Mutual Insurance Association of Chester do not require the signature of the township director to make a policy valid, which is otherwise properly executed.

Before WATTS, J., Newberry, March, 1897.   Reversed.

Action by L. M. Dickert *v.* The Farmers Mutual Insurance Association of Chester.   Judgment for plaintiff.   Defendant appeals.

*Messrs. Mower & Bynum*, for appellant.

*Messrs. Johnstone & Cromer* and *Jas. Y. Culbreath*, contra.

(Oral argument at hearing; no authorities afterwards furnished reporter.)

April 23, 1898.  The opinion of the Court was delivered by

MR. JUSTICE JONES.  This is an action on a fire insurance policy, and the appeal is from a judgment against the defendant.   1.  The first question raised by the exceptions is, whether the Circuit Court erred in ruling out the testimony of defendant's witness, J. Epps Brown, in reference to a conversation with plaintiff's husband concerning the cancellation of plaintiff's policy.   One of the defenses relied on was that the policy had been duly cancelled by defendant, and due notice thereof given to plaintiff more than thirty days prior to November 7, 1893, the time of the

fire. The defendant attempted to establish such notice in two ways: (1) direct notice in writing to plaintiff by mail; (2) verbal notice to her husband, as her agent. The evidence tended to show that in July, 1893, the defendant association cancelled plaintiff's policy, and directed J. Epps Brown, its agent, to notify plaintiff, and that soon thereafter Brown addressed a letter to plaintiff, at Walton, S. C., informing her of the action of the association. It appeared, however, in evidence, that Sunshine, S. C., was plaintiff's post office, and she testified that she did not receive the notice. Then defendant sought to show that Brown, about two weeks later, informed plaintiff's husband of the cancellation of the policy. The Court ruled out the testimony, on the ground that while there was some testimony going to show that plaintiff's husband was general manager of plaintiff's affairs, there was no proof that Mr. Dickert was the agent of his wife with reference to this policy other than taking it out. In this, we think, he erred. The testimony previous to the ruling was sufficient to carry the question of agency to the jury. The plaintiff, when asked whom she got to insure her property for her, answered: "My agent—my husband, Mr. Dickert." The evidence was that the policy was signed "L. M. Dickert, per J. R. Dickert, special agent." After defendant's counsel had interrogated plaintiff as to the various matters in which her husband had acted as her agent, her counsel asked: "Q. You were asked whether your husband was your general agent—that is to say, whether you allowed him and had him transact your business generally for you, your plantation business, hiring of your negroes, etc., and so on, and you say that you did? A. Yes, sir." There was evidence that the premiums were paid by or through plaintiff's husband; that plaintiff's husband had possession of the policy June 11, 1893, when D. J. Hentz, township director, indorsed on the policy his approval of the valuation, and that after the fire plaintiff's husband notified the defendant of the loss and demanded payment, and employed council to prosecute this suit. Other

facts and circumstances might be cited from the testimony, but the foregoing is ample to show that defendant was entitled to have the jury, under proper instructions, pass upon the question whether J. R. Dickert was such an agent of the plaintiff in reference to the matter of insurance, as that notice to him would be notice to plaintiff. "If the evidence adduced to support a claim of agency is undisputed, the question of whether it exists or not is one of law for the Court. Whenever it is disputed, however, it is one of mixed law and fact for the consideration of the jury, aided by instructions from the Court. The Court is to decide whether or not there is any evidence of agency. It follows, from the several ways in which agency may be created, that the evidence of appointment may be either direct or indirect." The foregoing extract from 1 Enc. of Law, 2 ed., 967–968, correctly states the rule applicable here. There being evidence from which the jury could infer that J. R. Dickert was a general agent for plaintiff, including the matter of insurance, it was error not to allow evidence of notice to such alleged agent of the cancellation of the policy.

2. The second question raised, is whether the Court erred in charging the jury to the effect that the signature of the township director was necessary, in addition to that of the president, the agent, and the plaintiff, to make the policy sued on valid, and that plaintiff was, therefore, not liable to a forfeiture of the policy for non-payment of an assessment made and noticed to her previous to the signature of the township directors. One of the defenses set up was forfeiture of the policy by non-payment of assessment. If the charge were erroneous, it was harmful to defendant, in that it destroyed this defense. The evidence showed that the policy was delivered to plaintiff in the early part of the year 1893, signed by the president and general agent of the association, and by the insured. The by-laws of the association provide that "policies of all county organizations operating under these charter privileges, shall first be signed by the general agent, and coun-

tersigned by the president, and insured of the respective county organization." We find nowhere in the by-laws any requirement that the signature of the township director must be attached to the policy. There is a provision that "it shall be the duty of each director to assist the agent in valuing all property entering the association and adjusting all losses in their respective township. The director may lower any property assigned this association that he thinks valued too highly, and give the agent notice of the same, who shall lower the same on his books, but the agent may appeal to the board of directors, whose decision shall be final." Clearly, if the association, upon payment of premiums, delivered to the insured the policy of insurance signed by the general agent and by the president, and by the insured, the policy was valid from its delivery, whether the township director assisted or not in valuing the property on its entering the association. In this case, the evidence was to the effect that the township director, after the delivery of the policy, indorsed on it his approval of the valuation of the property, June 11th, 1893. This indorsement by the director in no wise affected the policy as a valid policy from its delivery. At most, such act of the director was only evidence that he did not see fit to lower the valuation of the property after it had *entered* the association, which it could only do under a valid contract of insurance. Since there was evidence that plaintiff had been assessed for a loss, and duly notified thereof previous to June 11th, 1893, and that she failed to pay such assessment within the time expressly required by her contract of insurance, it was manifestly harmful error to charge the jury in effect that she was not liable to forfeiture of the policy for non-payment of assessment made previous to June 11th, 1893.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.